IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DEBORAH HERZOG,

              Plaintiff,

    v.

MICHAEL J. ASTRUE, Commissioner of Social
Security,

                   Defendant.

CV 07-703-ST

FINDINGS AND
RECOMMENDATION

STEWART Magistrate Judge,

      Plaintiff, Deborah Herzog, challenges the Commissioner's decision denying her application

for disability insurance benefits under Title II of the Social Security Act.  This court has jurisdiction

under 42 USC § 405(g).  The Commissioner's decision should be affirmed in part, reversed in part,

and remanded for calculation and award of benefits for the period beginning January 15, 2003.

      The court reviews the Commissioner's decision to ensure that proper legal standards were

applied and the findings are supported by substantial evidence in the record.  42 USC § 405(g);

1 - FINDINGS AND RECOMMENDATION

*Batson v. Comm'r of the Soc. Sec. Admin.,* 359 F3d 1190, 1193 (9th Cir 2004).  The administrative law judge ("ALJ") applied the five-step sequential disability determination process set forth in 20 CFR § 404.1520.  *Bowen v. Yuckert,* 482 US 137, 140 (1987).

Herzog alleged disability beginning in February 1999 at age 36 due to multiple sclerosis ("MS"), posttraumatic stress disorder ("PTSD"), non-insulin-dependent diabetes mellitus, right shoulder bursitis, lost strength in the right arm and hand, loss of sensation in the fingers, fatigue, low energy, poor concentration, and poor memory.  AR 83, 161, 699, 741, 748.[1]  She met the insured status requirements for a claim under Title II through March 31, 2004.  AR 104.  Thus, to prevail on her claim, she must establish that she became disabled on or before that date.  42 USC § 423(a)(1)(A).  *See Tidwell v. Apfel,* 161 F3d 599, 601 (9th Cir 1998).

Herzog contends the ALJ: (1) failed to properly identify all of her severe impairments at step two; (2) erred at step three by failing to consider her obesity when evaluating whether her impairments equal any of the presumptively disabling impairments enumerated in 20 CFR Part 404, Subpart P, Appendix 1 ("Listing of Impairments"); (3) did not accurately assess her residual functional capacity ("RFC"); and (4) failed to resolve conflicts between the vocational expert's ("VE") testimony and the information in the *Dictionary of Occupational Titles* ("DOT").  Herzog asserts these errors led the ALJ to erroneously conclude she remains capable of performing substantial gainful employment.

///

## FINDINGS

### I.    Severe Impairments

---

[1]  AR refers to page numbers in the administrative record filed August 13, 2007 (docket # 12).

Herzog contends the ALJ erred at step two by failing to identify carpal tunnel syndrome, PTSD, a personality disorder, a pulmonary impairment, degenerative changes in her hip, and obesity as severe impairments.

At step two, the ALJ must determine whether the claimant has any combination of impairments which meets the regulatory definition of severe by significantly limiting her ability to do basic work activities. 20 CFR § 404.1520(c). If the claimant is not severely impaired, the ALJ must find the claimant not disabled. In such cases, the decision-making process terminates at step two. 20 CFR § 404.1520(a)(4)(ii). The step-two inquiry is a "*de minimis* screening device to dispose of groundless claims." *Smolen v. Chater,* 80 F3d 1273, 1290 (9th Cir 1996).

The ALJ found that Herzog's combined impairments satisfied the step two threshold. AR 19. The ALJ continued the sequential decision-making process until reaching a determination at step five. Any error in designating specific impairments severe did not prejudice Herzog at step two, because step two was resolved in her favor. *See Burch v. Barnhart*, 400 F3d 676, 682 (9th Cir 2005) (any error in omitting obesity from list of severe impairments at step two harmless when step two was resolved in claimant's favor).

Herzog's argument may be construed as a challenge to the remaining steps of the ALJ's decision. Once a claimant has surmounted step two by showing severe impairment, the ALJ must consider the functional limitations imposed by all medically determinable impairments in the remaining steps of the decision-making process, including impairments the ALJ did not find severe at step two. 20 CFR § 404.1523; Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 (July 2, 1996). Accordingly, the ALJ was required to consider any functional limitations imposed by carpal tunnel syndrome, PTSD, a personality disorder, a pulmonary impairment, degenerative changes in

3 - FINDINGS AND RECOMMENDATION

the hip, and obesity at each step in the process.  It is therefore useful to identify any such functional limitations before proceeding to review the remaining steps of the ALJ's decision.

For reasons described more fully below, the Commissioner's decision must be reversed and Herzog deemed disabled as of January 15, 2003.   Thus, this inquiry is limited to the period from the alleged onset of disability in February 1999 to the disability date of January 15, 2003.

**A.    Functional Limitations Imposed by Carpal Tunnel Syndrome**

During an examination in March 1998, Herzog reported tingling in the index and third fingers of the right, non-dominant hand.  AR 386.  Herzog's physician referred to medical reports from 1994 indicating a diagnosis of carpal tunnel syndrome.  *Id*.  However, the 1994 reports are not part of the administrative record.

Herzog reported tingling in the fingers again in May and August 2001.  AR 847, 853. Intermittent tingling in the fingers of the right hand returned in January 2003 and persisted throughout the year.  AR 596, 789, 793, 881, 886.  There is no indication of the intensity, frequency, or limiting effect of these symptoms, however.  In addition, the tingling and numbness was often attributed to neurological consequences of MS and not carpal tunnel syndrome.  AR 596, 789, 793, 847, 853, 886.

By December 2003, Herzog had bilateral wrist pain and numbness with positive clinical signs of carpal tunnel syndrome.  AR 864, 881-83.  Nerve conduction studies then confirmed Herzog had bilateral severe median neuropathy across the carpal tunnel.  AR 864, 868, 880, 1040-41.  In February 2004, Herzog underwent surgical release of the right median nerve entrapment.  AR 1034, 1045-46.  She requested surgery to release the left carpal tunnel entrapment in November 2004 and

was reportedly on a waiting list for that procedure at the time of her administrative hearing.  AR 916-19, 949-50, 1184.

The ALJ found "no evidence [carpal tunnel syndrome] has been a medically determinable severe impairment."  AR 22.  Based on the evidence in the record, it cannot be denied that Herzog's carpal tunnel syndrome was medically determinable by December 2003.  However, in the period before Herzog's disability date on January 15, 2003, the evidence establishes only intermittent symptoms without specific functional limitations.

###### B.    Functional Limitations Imposed by PTSD and Personality Disorder

In July 1998, Judith Julien, PsyD, examined Herzog and prepared a comprehensive neuropsychological report.  AR 442-49.  Dr. Julien administered tests from which she concluded Herzog had average or higher cognitive and intellectual abilities, but might be overwhelmed by complex tasks or information.  AR 446.  On psychological inventories, Herzog's responses indicated a borderline to mild level of depression.  AR 447.  On the MMPI-2 personality inventory, Herzog responded in a manner consistent with individuals who lack consistent self confidence, can be insecure or anxious, and may have  interpersonal relationships that are marked by conflict and episodic acting out.  AR 444-46.  Dr. Julien diagnosed a depressive disorder, attention deficit hyperactivity disorder by history, and obsessive/compulsive, aggressive personality features.  AR 446.  Notably, Dr. Julien did not diagnose PTSD or a full-blown personality disorder.

In August 1999, Sandra Fresh, RN, saw Herzog for depression related to her recent MS diagnosis.  AR 358.  Fresh initially diagnosed an adjustment disorder with preexisting dysthymia and PTSD related to subjective reports of childhood abuse and abandonment.  AR 359.  Fresh did not identify functional limitations attributable to PTSD and did not diagnose a personality disorder.

In April 2000, Fresh indicated Herzog continued to deal with symptoms of major depression and PTSD.  AR 328.  In September 2000, however, Fresh opined that Herzog had a persistently melancholy personality style rather than an overlying mood disorder.  AR 319.  She felt cluster B personality traits affected Herzog's approach to life issues, but did not diagnose a full blown personality disorder.  *Id.*  Fresh did not identify specific functional limitations.

In January 2002, Paul Stoltzfus, PsyD, administered a psychological evaluation to assess Herzog for depression, PTSD, and attention deficit disorder.  AR 285-89.  He conducted a clinical interview and mental status examination, reviewed Herzog's medical records, and administered the Beck's depression inventory and an attention deficit rating scale.  He found Herzog had above average intellectual ability, unimpaired short-term memory, and full attention and concentration. AR 287-88.  Dr. Stoltzfus diagnosed chronic PTSD, dysthymic disorder, attention deficit disorder by history, and a personality disorder with schizoid and depressive traits.  AR 289.  He opined that Herzog had difficulty functioning in a reliable and productive fashion in the community and "will have difficulty functioning in a competitive work environment."  *Id.*  He did not identify specific functional limitations or findings to support his vague prediction or any work-related activities that Herzog would not be able to do.  He did not attribute the general difficulty of functioning to PTSD or personality disorder.  Dr. Stoltsfus noted that although Herzog's mood was much improved with antidepressant medication, she refused to use it.  *Id.*

In October 2002, Betty Ang, PhD, PMHNP, acknowledged Herzog's history of chronic depression and PTSD from childhood trauma.  AR 484.  She diagnosed only major depressive disorder, however.  *Id.*  Herzog reported symptoms including sad mood, low energy, tiredness, poor sleep, excessive worrying, memory and concentration problems, nightmares and racing thoughts.

AR 485.  Dr. Ang made no findings about the intensity, frequency, or functional consequences of these subjective feelings.  When Herzog's insured status expired in March 2004, Dr. Ang found her symptoms were "under good control with current therapy and medications."  AR 1024-25.

Mary Beth Rothengass, LCSW, had individual counseling sessions with Herzog beginning in November 2002.  AR 469.  Rothengass diagnosed Herzog with a major depressive disorder and a possible personality disorder.  *Id.*  In February 2003, Rothengass added PTSD to her diagnosis after Herzog reported nightmares and "hypervigilance" upon awakening.  AR 590. Rothengass's subsequent progress notes carried forward the PTSD diagnosis, but did not associate any specific functional limitations with the diagnosis.  Rothengass generally indicated that Herzog's mood was euthymic and affect appropriate.  AR 450, 454, 456, 466, 573, 577, 580, 585, 593, 787, 789, 890, 891, 894, 898, 1024, 1028, 1031, 1054, 1099.

The ALJ found the diagnoses of PTSD and personality disorder had been established only by Herzog's subjectively reported history and had not been confirmed by findings in the record. AR 19.  Herzog argues the ALJ's rejection of the diagnoses was improper.  An ALJ is entitled to reject medical source statements that are premised primarily on subjective complaints that the ALJ properly finds unreliable.  *Ryan v. Astrue*, 528 F3d 1194, 1199-1200 (9th Cir 2008); *Tonapetyan v. Halter*, 242 F3d 1144, 1149 (9th Cir 2001).  The ALJ found Herzog's subjective statements about her impairments unreliable.  AR 21-25.  As discussed more fully below, the credibility determination should be affirmed as it relates to the period from February 1999 to January 15, 2003.

Even if the diagnoses of PTSD and personality disorder were appropriate and should not have been discounted, the record does not include evidence of specific functional limitations imposed by them.  A diagnosis without significant functional limitations has no consequence in the

7 - FINDINGS AND RECOMMENDATION

determination of disability.  20 CFR § 404.1520(c).  Dr. Stoltzfus believed Herzog would have difficulty in a working environment, but did not identify the nature, intensity or frequency of that difficulty.  In addition, he examined Herzog while she was not compliant with treatment by failing to take prescribed antidepressant medications which had been effective previously.

The ALJ limited Herzog's RFC to simple 1-2-3 step tasks, so that she would not be overwhelmed by complex tasks or information.  AR 21.  Herzog failed to carry her burden of proving that she experienced an additional severe impairment from PTSD or a personality disorder. She did not establish specific functional limitations for the ALJ to consider in the remaining steps of the decision-making process.

### C.    <u>Functional Limitations from a Pulmonary Impairment</u>

Herzog has a history of bronchial asthma.  AR 215.  In August 1999, diagnostic images showed no active disease process in the lungs.  AR 376.  In December 1999, she reported having asthma symptoms rarely and keeping inhalers on hand for when they occur.  AR 340.  In October 2002, Herzog underwent a pulmonary function test which showed moderate ventilatory impairment. AR 603.  In routine health maintenance visits, Herzog did not report chest pain or shortness of breath or any other problem with pulmonary function, other than rare asthma symptoms alleviated with inhaled bronchodilators. AR 796, 874, 882-83, 1019.  Her chest x-ray was unchanged in January 2005, remaining within normal limits.  AR 912.  Throughout the relevant period, Herzog was  a tobacco user and resisted recommendations from medical providers to quit.

The ALJ limited Herzog's RFC to reflect her pulmonary impairment by excluding exposure to respiratory irritants.  AR 21.  Based on the evidence in the record, Herzog cannot show that she

experiences functional limitations due to her moderate pulmonary condition which the ALJ failed to consider in the remaining steps of his decision.

### D. **Functional Limitations Attributable to Degenerative Hip Changes**

In October 2002, a bone density study was normal and showed mild to moderate degenerative changes in the right hip. AR 604. Herzog has not identified any evidence of functional impairment from the degenerative changes in her hip which the ALJ failed to consider in the remaining steps of the decision-making process.

### E. **Functional Limitations Attributable to Obesity**

The medical records show that Herzog is obese. AR 292. In her application, Herzog did not allege functional limitations attributable to her obesity. She did not identify any medical finding of a functional limitation attributable to or exacerbated by obesity. She did not report functional limitations from obesity to her treating physicians. Although treating sources acknowledged Herzog's obesity and counseled her to lose weight, none described the functional impact of her weight or indicated specific functional limitations.

Herzog argues the ALJ failed to comply with SSR 02-01p, 2000 WL 628049 (Sept. 12, 2002), under which an ALJ must consider the effects of obesity in the decision-making process. As Herzog argues, SSR 02-01p describes the potential effects obesity may cause or contribute when combined with other impairments. As with any impairment, however, neither potential effects nor the bare diagnosis is sufficient to establish a severe impairment. SSR 02-01p requires "an individualized assessment of the impact of obesity on an individual's functioning . . .[the ALJ] will evaluate each case based on the information that is in the record." SSR 02-01p, 2000 WL 628049 at *4, *6.

9 - FINDINGS AND RECOMMENDATION

Herzog has not identified evidence of any functional limitations resulting from her obesity that the ALJ failed to consider, and the court finds none in the record. The record reveals only the bare fact that Herzog is obese. The ALJ considered all evidence of functional impairment from all sources in combination. Despite Herzog's speculation about the potential impact of obesity on her functioning, no information in this record shows that any impact actually exists. Accordingly, Herzog failed to carry her burden of proving that she has functional limitations from obesity which the ALJ failed to consider in the remaining steps of the decision-making process.

## II.    <u>Listing of Impairments</u>

The Listing of Impairments is a regulatory enumeration of medical conditions which the Commissioner acknowledges are so severe as to preclude substantial gainful activity. *Bowen v. Yuckert*, 482 US 137, 140-41 (1987); 20 CFR § 404.1525(a). A claimant is presumed disabled if she can show medical findings that meet the specific criteria listed in the regulations for a listed impairment. 20 CFR § 1525(a); *Lewis v. Apfel,* 236 F3d 503, 514 (9th Cir 2001). If a claimant's impairments do not individually meet the criteria specified for a listed impairment, then she is still disabled if she can show her combined impairments produce medical findings that are at least equal in severity and duration to the criteria of a listed impairment. 20 CFR § 404.1526(a); *Lewis,* 236 F3d at 514. For example, equivalence can be established if a claimant has impairments that, in combination with obesity, satisfy the requirements of a listed impairment. SSR 02-01p.

Herzog argues the ALJ failed to consider her obesity in combination with her other medically determinable impairments. Had he done so, she claims that he might have agreed with her that her impairments equal Listings 12.04, 12.06, 12.08 and 11.09C. Listings 12.04, 12.06 and 12.08 describe the criteria for establishing a presumptively disabling level of impairment from Affective

disorders, Anxiety disorders, and Personality disorders, respectively.  Listing 11.09C describes the criteria for establishing the requisite severity level for MS.

A claimant can establish the required level of severity for equivalence with the three Listings for mental impairments by satisfying the paragraph B criteria, which are the same for all three Listings.  The claimant must show at least two of the criteria in paragraph B of the Listing: (1) marked restrictions of activities of daily activity; (2) marked difficulties in maintaining social functioning; (3) marked difficulties in maintaining concentration, persistence, or pace; and (4) repeated episodes of decompensation, each of extended duration.  20 CFR §§ 404.1520a(c), (d), Listing of Impairments §§ 12.00, 12.04(B), 12.06(B), 12.08(B).  The ALJ found Herzog's impairments imposed no restriction of activities of daily living,  mild difficulties maintaining social functioning, moderate difficulties maintaining concentration, persistence or pace, and no episodes of decompensation.  AR 20, 57.  These findings are consistent with the record as a whole.

Alternatively, the severity required for equivalence with Listings 12.04 and 12.06 can be established by satisfying the paragraph C criteria of those Listings.  The C criteria require proof of an inability or extremely tenuous ability to function independently.  Listing of Impairments §§ 12.04(C), 12.06(C).  The ALJ found the evidence did not establish the C criteria, and that finding is consistent with record as a whole.

To show the required level of severity to establish equivalence with Listing 11.09(C), a claimant must show "significant, reproducible fatigue of motor function with substantial muscle weakness on repetitive activity, demonstrated on physical examination, resulting from neurological dysfunction in areas of the central nervous system known to be pathologically involved by the

multiple sclerosis process." The ALJ found the medical evidence did not satisfy this requirement (AR 20), and Herzog has cited no evidence to establish the required findings.

Herzog contends that the ALJ erred by not considering obesity in determining whether her medical condition is equivalent to Listings 11.09(C), 12.04, 12.06 or 12.08. She did not produce evidence that her obesity, alone or in combination with her mental impairments, restricted her daily activities or social functioning, had any impact on her concentration, persistence or pace, or caused episodes of decompensation. She did not produce evidence showing her obesity exacerbated a tenuous ability to function independently. She did not produce physical examinations suggesting that obesity exacerbated deficits in motor function.

To the contrary, Herzog reported engaging in a wide range of activities including typical activities of a homemaker, volunteering at her synagogue, making craft items and artwork, reading, completing crossword puzzles, taking walks, progressing to black-belt level in Taekwondo, crocheting, and knitting. These activities, despite Herzog's obesity, are inconsistent with the B and C severity criteria for the four asserted Listings.

A claimant must provide evidence to prove her impairments are equivalent to a listed impairment. *Burch,* 400 F3d at 683; *Lewis,* 236 F3d at 514. An ALJ may not make assumptions about the severity or functional effects of obesity in combination with other impairments, but instead must make a determination based on the evidence in the record. SSR 02-01p. Herzog did not produce evidence that could establish equivalence with the four asserted Listings. Accordingly, the ALJ's step three determination should not be disturbed.

///

///

**III.**    **RFC Assessment**

The RFC assessment describes the work-related activities a claimant can still do on a sustained, regular, and continuing basis, despite the functional limitations imposed by her impairments.  20 CFR § 404.1545(a); SSR 96-8p.  The RFC assessment must be based on all the evidence in the record, and the ALJ must consider all allegations of limitations and restrictions.  SSR 96-8p, 1996 WL 374184 at * 5.

Here the ALJ determined that Herzog retained the RFC to perform a range of light and sedentary work requiring her to lift and carry no more than 20 pounds occasionally and 10 pounds frequently.  AR 21.  She can balance or climb only occasionally and must be permitted to sit or stand at will.  Herzog must be able to avoid respiratory irritants, have ready access to a bathroom, and cannot be expected to perform work tasks more complex than simple 1-2-3 step tasks at a moderate pace.  *Id*.  Occasionally, she is limited in the ability to use her right hand for fine finger manipulation.  *Id*.

Herzog contends the ALJ's RFC assessment failed to accurately reflect her actual functional limitations because he improperly rejected her subjective statements about her symptoms, misinterpreted the state agency physicians' findings regarding her limitation in fine finger manipulations, and erroneously applied the incorrect standard of proof.

**A.**    **Credibility Determination**

Herzog claims the ALJ improperly discredited her allegations and subjective statements, particularly her primary assertion that she cannot sustain activity at any level long enough to work.

At the hearing in February 2003, Herzog testified she was tired all the time, with increased fatigue following her weekly Avonex (Interferon) injections for MS and after strenuous activity.

AR 1203-05.  She had to take breaks every 15 or 20 minutes while vacuuming, dusting, and cleaning house.  AR 1219.  She was able to walk for 30 minutes and attend modified 45 minute Taekwondo workouts with rest breaks.  AR 1210-11, 1215.  When asked why she would not be able to work at a job that did not require strenuous activity, Herzog identified memory problems, lack of focus, low energy, and fatigue as the primary impediments.  AR 1223-24.

At the second hearing in August 2005, Herzog testified her condition had worsened and she had to budget her time and energy because she tired very quickly.  AR 1172.  She could not do more than light housecleaning in the mornings with frequent rest breaks, and then rested most of the afternoon.  AR 1174.  Herzog testified that she was taking Avonex injections every other week, although weekly injections provide the optimal dosing.  She discontinued weekly injections because they caused flu-like symptoms with excess fatigue and low energy which persisted for days after the injection.  AR 1175.

The ALJ accepted that Herzog could not maintain strenuous activities and limited her RFC to a narrowed range of light and sedentary work. AR 21.  He rejected Herzog's assertions of functional limitations in excess of those in the RFC assessment and that she cannot perform any kind of substantial gainful activity.  AR 21-25.

In deciding whether to accept subjective statements, an ALJ must perform two stages of analysis.  The first stage is a threshold test in which the claimant must produce objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. *Smolen*, 80 F3d at 1281-82; *Cotton v. Bowen*, 799 F2d 1403, 1407-08 (9th Cir 1986).  There is no dispute about the first stage here.

At the second stage of the credibility analysis, an ALJ may discredit a claimant's testimony regarding the severity of symptoms by providing clear and convincing reasons for doing so. *Smolen*, 80 F3d at 1283*; Dodrill v. Shalala*, 12 F3d 915, 918 (9th Cir 1993).  The ALJ must make findings that are "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F3d 748, 750 (9th Cir 1995). The ALJ may consider objective medical evidence, the claimant's treatment history, daily activities, and work record, and the observations of treating sources and third parties with personal knowledge of the claimant's functional limitations.  *Smolen*, 80 F3d at 1284; SSR 96-7p, 1996 WL 374186 (July 2, 1996).

The ALJ found the objective medical evidence, treatment records, and reports of treating sources did not support Herzog's assertions of debilitating symptoms.  For example, Herzog alleged disability beginning in February 1999, but treatment records show her first episode of MS symptoms did not occur until August 1999.  AR 357, 699.  By November 1999, those symptoms had largely resolved.  AR 344, 358.  Herzog began weekly Avonex injections and tolerated them well, except for flu-like symptoms and fatigue following each injection.  AR 339-40, 344.

The ALJ found Herzog's work history also inconsistent with disability beginning in February 1999.  AR 25.  She stopped working six months before she became ill and remained unemployed because she was unable to find work.  AR 699.  Since she cannot plausibly claim she stopped working because of limitations imposed by her health, the ALJ could draw an adverse inference as to credibility from this evidence.  *See Bruton v. Massanari*, 268 F3d 824, 828 (9th Cir 2001) (sufficient reasons for disregarding subjective testimony include stopping work due to layoff rather than for medical reasons and failure to seek care at the time claimant stopped work).

The ALJ found Herzog's reported activities inconsistent with the level of impairment she alleged, noting that she remained quite busy for someone unable to work.  AR 22, 24.  It is true that Herzog's reported activities are inconsistent with disability beginning in 1999.  In written submissions provided in January 2002, Herzog described her average daily activities filling the day and evening.  AR 134, 157.  Fatigue had little impact unless Herzog was working on an unusually big chore.  AR 132.  She took frequent breaks, but they were not essential.  *Id.*  She shared in housekeeping chores, engaged in hobbies, and participated in social and religious activities.  AR 133, 134, 138, 140-41, 152, 153-55.  While these activities do not individually compare with sustained work-activities, the ability to regularly maintain the total activity level was inconsistent with the degree of impairment Herzog alleged.

The ALJ also relied on the reports of treating sources.  During 2000, Herzog's MS symptoms remained mild to moderate, principally entailing episodes of fatigue. Her mood was generally euthymic and stable.  She tolerated the Avonex therapy well, except she continued to report fatigue as a side effect.  AR 320, 324, 325, 329, 331, 335.

In May 2001, Herzog experienced tingling in the feet and hands, and loss of sensation in the legs.  She was non-compliant with her Avonex treatments due to difficulties giving herself the injection and side effects.  AR 315, 856-57.  Her treatment provider, Gordon Campbell, FNP, a neurological nurse practitioner, urged her to comply with the prescribed dosing of weekly injections. AR 844.

In January 2002, Robert Irwin, MD, performed a consultative evaluation.  AR 290-95.  He found Herzog's right side, and particularly the right upper extremity, affected by MS.  AR 294.  On physical examination, Herzog had difficulty initiating coordination of activities with the right upper

extremity in range of motion tests.  *Id*.  She had cranial nerve abnormalities.  *Id*.  She had right

shoulder pain that could be related to MS, bursitis, or radiculopathy.  *Id*.  Dr. Irwin also noted a

grossly normal gait, fair tandem gait, good ambulation and balance, and ability to manipulate large

and small objects normally.  AR 292-93.  In September 2002, Herzog reported 10 days of right leg

and arm weakness with loss of sensation and gait unsteadiness.  AR 519.  She again admitted

irregular compliance with her Avonex therapy.  AR 519, 528.

In January 2003, Herzog experienced intermittent tingling in the fingers of the right hand.

She had not taken Avonex injections due to extended cold and flu-like symptoms.  AR 596.  She was

walking three times a week for up to 20 minutes and taking Taekwando classes three times a week.

*Id*.  She needed to rest after 30 minutes when cleaning house.  *Id*.  On January 15, 2003, neurology

nurse practitioner Campbell stated in treatment notes that Herzog had a level of neuromuscular

fatigue severe enough to impair full daily activities, including working a full day without special

provisions.  *Id*.  Campbell expressed the same opinion after examining Herzog in July 2003.

AR 886.

In January 2004, Mary Fitzpatrick, NP, working with Ruth Witham, MD,  found subjective

and objective signs of MS disease progression.  AR 1051.  Herzog's symptoms included general

fatigue which increased following her Avonex injections, depression, residual weakness on the right

side, heat sensitivity and memory impairment.  AR 1050-51.  This was a few months before

Herzog's insured status expired on March 31, 2004.  AR 104.

In May 2004, Fitzpatrick urged Herzog to increase her Avonex injections to the optimal

dosing of four times per month.  AR 1010-11. Throughout 2004, Herzog continued to be bothered

by fatigue and depression, but declined to increase the frequency of Avonex injections.  AR 974,

992.  In January 2005, Herzog started therapy with Prozac and reported her fatigue was somewhat improved without adverse side effects.  AR 932-33.  She continued to have flu-like symptoms and increased fatigue following each Avonex injection, sometimes persisting for up to a week after each injection.  *Id.*

The ALJ concluded from this treatment record that Herzog generally functioned well during the relevant period with mild symptoms when compliant with prescribed therapy.  AR 23-24.  He found she tolerated the Avonex injections and obtained good results from antidepressant medications, but repeatedly failed to comply with her prescribed course of treatment.  When a claimant makes subjective statements about disabling symptoms, but fails to comply with prescribed treatment, an ALJ may reasonably find the subjective statements unjustified or exaggerated.  *Orn v. Astrue,* 495 F3d 625, 638 (9th Cir 2007).

The ALJ reached his conclusion, however, by disregarding Herzog's significant side effects of excessive fatigue and flu-like symptoms associated with the Avonex injections.  Failure to comply with treatment recommendations does not adversely affect the claimant's credibility if it can be reasonably explained.  *Id*; *Fair v. Bowen,* 885 F2d 597, 603 (9th Cir 1989).  The ALJ did not address the presence or absence of a reasonable explanation.

In addition, the ALJ failed to account for the opinion of nurse practitioner Campbell.  As noted previously, Campbell opined beginning on January 15, 2003, that Herzog suffered a level of neuromuscular fatigue sufficiently severe that it would be expected to impair full daily activities, such as working a full day without special provisions.  AR 596, 886.

An ALJ is required to consider and give due weight to all relevant evidence in the case record, including opinion evidence from medical sources such as nurse practitioners who have seen the

claimant in their professional capacity. 20 CFR § 404.1527(b); SSR 06-03p, 2006 WL 2329939 (Aug. 9, 1996) at *4. Campbell is a qualified health professional with expertise in neurology and a long term treatment relationship with Herzog.  His treatment included diagnostic and functional assessment measures which gave him special knowledge of Herzog's neuromuscular decline from the MS disease process.  His opinion coincided with a decline in Herzog's reported activity level. It is further corroborated by later objective and clinical signs of MS disease progression found by nurse practitioner Fitzpatrick and Dr. Witham in January 2004.  Accordingly, Campbell's opinion should have been given weight or the ALJ should have explained why it was not entitled to any weight.

Consequently, the ALJ's reasoning for discrediting Herzog's allegations and subjective statements are clear and convincing only with respect to the period from the alleged onset of disability in February 1999 until Campbell corroborated her statements with his opinion on January 15, 2003.    The remainder of the ALJ's reasoning with respect to his credibility finding is not clear and convincing.  The ALJ believed Herzog's ability to participate in 45 minute Taekwondo workouts was inconsistent with her alleged inability to lift more than 15 pounds, use her hands for fine manipulation, climb stairs, and engage in substantial gainful activity. AR 22. The ALJ believed an individual suffering from debilitating fatigue and neuropathy would chose a low impact exercise program rather than Taekwondo.  *Id.*

This reasoning is intuitively appealing because engaging in martial arts does indeed seem to be a strenuous endeavor.  Ultimately the reasoning is not clear and convincing, however.  Herzog testified that she rested during the classes, practiced striking at break-away plastic boards, worked at a slower pace that the rest of the class, and took the class as part of her prescribed treatment.

AR 1177-82.  Without further information not in the record, it is impossible to assess the activities she engaged in or their exertional and functional requirements.  In any event, the ability to engage in such activities for less than 45 minutes at a time several times a week has little bearing on whether she can sustain work activities over the course of a typical work schedule.

The ALJ found Herzog's credibility diminished because she was encouraged by a treating source to consider taking a computer class, was sometimes more able than other times to overcome her needle phobia, and receives disability benefits from other agencies, and because personality testing in 1998 by a state Vocational Rehabilitation agency did not suggest she had disabling personality characteristics.  AR 24-26.  None of these points provide a clear and convincing basis to discredit Herzog's allegation that MS fatigue prevents her from maintaining a sufficient level of energy to engage in substantial gainful activity.

Based on the foregoing, the ALJ's reasons for discounting Herzog's description of her medical condition and functional limitations during the period from the alleged onset of disability in February 1999 until January 15, 2003, should be affirmed.  However, the ALJ failed to consider Campbell's opinion and improperly discredited Herzog's allegations and about her functional limitations after January 15, 2003.  Accordingly the ALJ's RFC assessment should be sustained as to the earlier period and rejected as to the later period.

### B.    Standard of Proof

Herzog argues the ALJ applied the incorrect standard of proof in making factual findings to support his RFC assessment.  The ALJ stated his conclusion that "the substantial evidence of record reasonably supports my findings for the described residual functional capacity."  AR 27.  Herzog

contends the ALJ improperly applied the standard of review and was required to make findings supported by a preponderance of the evidence.

The Social Security Act places the initial burden of producing evidence and proving the functional limitations that make up the claimant's RFC on the claimant.  42 USC §§ 405(g), 423(d)(5); *Roberts v. Shalala*, 66 F3d 179, 182 (9th Cir 1995).  Neither the Act nor the regulations governing the disability determination process prescribes the quantum of proof that is required.  The question has not yet been addressed by the Ninth Circuit.

Even if Herzog is correct that the standard of proof is a preponderance of the evidence, there is no error here because the burden of proof rests upon her.  The ALJ's statement does not address the standard of proof he applied in weighing the evidence Herzog presented.  He commented only on the evidence supporting his own conclusions, perhaps for the benefit of the reviewing court.  The ALJ did not find explicitly that Herzog failed to prove her allegations by a preponderance of the evidence, but this court is not aware of any authority requiring an ALJ make such a finding. Accordingly, Herzog's argument is rejected.

### C.    State Agency Reviewing Physicians' Opinions

The Commissioner relies on medical and psychological consultants to make findings of fact about the nature of a claimant's impairments and the severity of the functional limitations they impose.  20 CFR § 404.1527(f); SSR 96-6p, 1996 WL 374180 (July 2, 1996).  Such reviewing sources do not treat or examine the claimant.  Therefore, their opinions are held to stricter standards and are given weight only to the extent they are supported by the record and consistent with the record as a whole.  *Id.*  The ALJ is not bound by the findings of reviewing consultants, but may not ignore their opinions and must explain the weight given to the opinions in his decision.  *Id.*

The record includes three Residual Physical Functional Capacity Assessments prepared by state agency reviewing physicians. On March 8, 2002, Dr. Spray found Herzog limited to occasional rapid fine manipulation with the right hand. AR 434. On July 29, 2003, Dr. Kehrli found no limitation in Herzog's ability to use her hands. AR 753. On January 14, 2004, Dr. Eder found Herzog limited bilaterally in fine and gross manipulation and unable to engage in constant handling or fingering. AR 774.

The ALJ did not explain how he resolved the differences in these opinions. He did not discuss them or explain the weight he gave them in his decision, as required by SSR 96-6p. The court is unable to determine whether the ALJ disregarded the various opinions or discounted them for legitimate reasons. This error has no consequence, however, since it relates solely to the period after Herzog became disabled in January 2003.

Herzog also asserts the ALJ implicitly rejected Dr. Spray's opinion, which relates to the period before January 15, 2003. The ALJ found Herzog "occasionally limited in use of her right (non-dominant) hand for rapid fine finger manipulations." AR 21. He relied on testimony elicited from the VE with a cumbersome hypothetical which included the following limitation: "with the right hand there would be occasional limitation — limitation of the use of the right hand only occasionally to rapid fine finger, fine finger manipulation." AR 1227.

Herzog argues the ALJ misinterpreted Dr. Spray's opinion with his awkward use of the word "occasional." This argument is not persuasive. While posing his hypothetical question to the VE, the ALJ referred to the written document Dr. Spray prepared, presumably so the VE could read along and understand Dr. Spray's findings. In addition, vocational experts, ALJs, and state agency consulting physicians are extremely familiar with such terms of art and how they are commonly used.

Both factors make it exceedingly unlikely that the ALJ meant or the VE understood him to mean anything but that Herzog could use her right hand for occasional rapid fine manipulation.  The hypothetical given to the VE can reasonably be interpreted in this way.

If so, Herzog further argues that the ALJ erroneously relied on testimony from the VE which contradicted information in the DOT about fingering and handling requirements of work identified by the VE.  That argument is discussed next.

**IV.    Vocational Testimony**

Herzog contends the ALJ erroneously relied on testimony from the VE which contradicted information in the DOT.  The ALJ relied on the transcript of testimony from a VE who appeared at the 2003 hearing before a different ALJ.

The Commissioner relies primarily on the DOT for information about the requirements of work.  20 CFR Part 404, Subpt P, App 2 § 200.00(b); SSR 00-4p, 2000 WL 1898704 (Dec. 4, 2000).  An ALJ may rely on the testimony of a VE for additional guidance, but the information should be consistent with the occupational information in the DOT.  SSR 00-4p, 2000 WL 1898704 at *2.  When an apparent conflict exists between the information in the DOT and the evidence provided by the VE, the ALJ must elicit a reasonable explanation and resolve the conflict before relying on the VE's testimony to find the claimant not disabled.  *Id.*  The ALJ has an affirmative responsibility to ask about any possible conflict between the evidence given by the VE about the requirements of an occupation and the information in the DOT.  *Id* at *4.  An ALJ may rely on expert testimony which contradicts the DOT, if the record contains persuasive evidence to support the deviation.  *Johnson v. Shalala*, 60 F3d 1428, 1435 (9th Cir 1995).

Herzog contends the VE's testimony conflicts with the DOT in two respects. First, the VE responded to the ALJ's hypothetical limitation regarding fine finger manipulation, stating that a person with such a limitation could work as an Administrative Support Person/Addresser or Office Helper. Information in the DOT indicates these occupations require frequent handling and fingering, contrary to her limitation to occasional rapid fine manipulation. Herzog is left hand dominant and has no limitation on her dominant side. She can engage in unlimited fingering and handling with her dominant hand and unlimited handling and non-rapid fingering on her non-dominant side. Because the DOT does not specify bilateral frequent fingering and handling, the court finds no apparent conflict.

Second, Herzog contends the VE's response the ALJ's hypothetical question conflicted with the General Educational Development ("GED") Reasoning Level assigned to both occupations by the DOT. The ALJ asked the VE to "consider jobs that don't involve detailed or complex job duties or instructions, whether they be written or oral." AR 1228. The DOT indicates the occupations Administrative Support Person/Addresser and Office Helper require GED Reasoning Level 2. GED Reasoning Level 2 requires the ability to "apply commonsense understanding to carry out detailed but uninvolved written or oral instructions." DOT, Appendix 3, *available at* http://www.occupationalinfo.org/appendxc_1.html#III.

Herzog is correct that the VE's testimony conflicts with the DOT information requiring the ability to understand and carry out detailed instructions. The ALJ did not fulfill his duty to ask about and resolve this conflict as required by SSR 00-04p. The error is harmless, however, because the ALJ did not rely on this aspect of the VE's testimony to find Herzog not disabled. The ALJ did not find Herzog's ability to understand and carry out detailed instructions impaired. The pertinent part

of the ALJ's RFC assessment states that Herzog has the ability to "perform simple 1-2-3 step tasks at a moderate pace." AR 21. This limitation is entirely consistent with DOT GED Reasoning Level 2. The ALJ is not required to accept as true restrictions in his RFC assessment all the hypothetical limitations proposed during the administrative hearing. *Osenbrock v. Apfel,* 240 F3d 1157, 1164-65 (9th Cir 2001).

**V.   <u>Remand</u>**

The court has discretion to award benefits to a claimant whenever there is no need to remand the case for additional factual findings. *Ghokassian v. Shalala,* 41 F3d 1300, 1304 (9th Cir 2001); *Harman v. Apfel*, 211 F3d 1172, 1178 (9th Cir), *cert denied*, 531 US 1038 (2000). A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings, or when the record has been fully developed and the evidence is not sufficient to support the Commissioner's decision. *Varney v. Sec'y of Health and Human Servs.,* 859 F2d 1396, 1399 (9th Cir 1988). One factor that should guide the exercise of discretion is the importance of expediting disability claims. *Id* at 1401.

When an ALJ's reasons for rejecting the claimant's evidence are legally insufficient and it is clear from the record that the ALJ would be required to find the claimant disabled if he had credited the evidence, remand for a calculation of benefits is appropriate. *Orn,* 495 F3d at 640; *Harman,* 211 F3d at 1178; *Smolen,* 80 F3d at 1292. Here the ALJ gave no legitimate reason for disregarding Campbell's opinion and improperly discounted Herzog's subjective statements with respect to her functional limitations after January 15, 2003.

The VE's testimony established that the Herzog would not be able to sustain competitive employment if the ALJ had credited that evidence. AR 1237-40. Accordingly, further proceedings

would serve no useful purpose and a remand for an award of benefits is appropriate.  *Benecke v. Barnhart,* 379 F3d 587, 593 (9th Cir  2004).

## RECOMMENDATION

Based on the foregoing, the court should affirm the Commissioner's decision with respect to the period from the alleged onset date until January 15, 2003, but reverse and remand to the Commissioner pursuant to sentence four of 42 USC § 405(g) for calculation and award of benefits with respect to the period beginning January 15, 2003.

## SCHEDULING ORDER

Objections to the Findings and Recommendation, if any, are due September 8, 2008.  If no objections are filed, then the Findings and Recommendation will be referred to a district judge and go under advisement on that date.

If objections are filed, then a response is due within 10 days after being served with a copy of the objections.  When the response is due or filed, whichever date is earlier, the Findings and Recommendation will be referred to a district judge and go under advisement.

DATED this 19th day of August, 2008.

/s/  Janice M. Stewart_____
Janice M. Stewart
United States Magistrate Judge

26 - FINDINGS AND RECOMMENDATION